IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| RENEE CHRISTENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:17 C 50255 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| BOARD OF TRUSTEES FOR | ) | |
| ROCK VALLEY COLLEGE, and | ) | |
| ROCK VALLEY COLLEGE, in | ) | |
| their official and individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Renee Christensen was fired in October 2014 from her faculty position at Rock Valley College. She filed this lawsuit alleging that the college terminated her because of her disability and failed to reasonably accommodate her, both in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*; the Rehabilitation Act, 29 U.S.C. § 701, *et seq*; and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. Ann. 5/1-101, *et seq*. The Defendants—Rock Valley College and its Board of Trustees (collectively, "Rock Valley" or "the college")—have moved for summary judgment as to both of Christensen's claims. For the following reasons, the motion is granted.

## Background[1]

Rock Valley hired Christensen in 1998 and at all relevant times employed her as a tenured, full-time faculty member in the college's Fitness, Wellness, and Sports Department. Defs.' L.R. 56.1 Statement of Facts ("DSOF") ¶ 7, ECF No. 51. Christensen taught lecture- and lab-based classes and was responsible for lesson planning, preparing class materials, grading, and evaluating students. *Id.* ¶ 9. Over the years, she was diagnosed with, and had a record of, various impairments, including an ankle injury, migraine headaches, and ADHD. Pl.'s L.R. 56.1 Statement of Additional Facts ("PSOAF") ¶ 39, ECF No. 59.

Rock Valley's administration received complaints from students about Christensen's punctuality, attendance, and the quality of her teaching. DSOF ¶ 11. During the Fall 2013 academic term alone, Christensen missed 23 classes. *Id.* ¶ 12. As a result, members of the administration, including Vice President of Academic Affairs Brian Sager and Dean of Social Science and Education and Humanities Ronald Geary, met with Christensen several times to discuss her performance issues, including her excessive absences. *Id.* ¶ 13.

As Christensen's tardiness and absenteeism continued, the administration also grew increasingly concerned about her mental state given what they perceived to be her unusual comments and behaviors. *Id.* ¶ 14. Pursuant to the collective bargaining agreement, Rock Valley decided to refer Christensen for a fitness-for-duty examination in the spring of 2014. *Id.* ¶¶ 14–15. The college selected and

---

[1] The following facts are undisputed or have been deemed admitted, unless otherwise noted.

retained Dr. William Giakas to perform that examination. *Id.* ¶ 18. At Christensen's request, Rock Valley also allowed her treating doctor, Dr. Ramesh Vermuri, to perform a second evaluation at the college's expense. *Id.* ¶ 19. In keeping with the collective bargaining agreement, Rock Valley placed Christensen on paid administrative leave pending the examination results. *Id.* ¶ 21.

On April 8, 2014, Dr. Vermuri concluded that Christensen was able to perform the essential duties and responsibilities of her position. *Id.* ¶ 22. Two weeks later, Dr. Giakas performed a complete forensic psychiatric evaluation on Christensen; he spent 8.5 hours with her and reviewed her past medical history, performance evaluations, and job responsibilities. *Id.* ¶ 23. In the end, Dr. Giakas concluded that Christensen exhibited a mild to moderate degree of interrupted and disorganized thinking and a moderate degree of impairment in concentration and attention. *Id.* He further concluded, within a reasonable degree of medical certainty, that Christensen was unable to fulfill her job responsibilities and obligations. *Id.* Dr. Giakas's findings were memorialized in a ten-page report. *Id.*

Because Rock Valley found Dr. Giakas's analysis to be highly detailed and Dr. Vermuri's analysis to be brief and lacking in substance, it afforded Christensen an opportunity to have her doctors rebut the findings in Dr. Giakas's report and to provide any supplemental information she thought relevant, including any requests for accommodations. *Id.* ¶¶ 24, 27.

Christensen did provide Rock Valley with a letter from an internist, Dr. James Koepsell, but it is undisputed that the letter failed to address the medical

3

concerns identified by Dr. Giakas and did not reference any neurological assessments. Christensen also provided an undated psychiatric evaluation from Dr. Vermuri where he asserted that Christensen's "cognition is intact," but he did not provide any evidence to support this contention. Finally, Christensen submitted a psychological evaluation from Dr. Robert Meyer, but it merely addressed whether Christensen's symptoms were related to her ADHD. *Id.* ¶ 28.

After considering the supplemental information, Rock Valley determined that Christensen had not rebutted Dr. Giakas's conclusion that she was unfit to fulfill her job responsibilities and obligations. Rock Valley also found that Christensen had not requested any accommodations, *id.* ¶ 29, although Christensen contends that she did, PSOAF ¶ 37.

On September 30, 2014, Rock Valley sent Christensen a written Notice of Charges for Recommendation for Dismissal. DSOF ¶ 31. The college allowed Christensen and her union representative an opportunity to appear before the Board of Trustees to contest the dismissal recommendation. *Id.* ¶ 32. On October 28, 2014, Rock Valley's Board of Trustees approved Christensen's dismissal. *Id.* ¶ 33.

Christensen subsequently brought this action under the ADA, the Rehabilitation Act, and the IHRA. Compl., ECF No. 1. Following the college's successful partial motion to dismiss, Christensen's remaining claims are that Rock Valley (1) wrongfully fired her based on her disability and (2) failed to reasonably

4

accommodate that disability.[2] *See* 2/15/18 Order, ECF No. 29. Rock Valley moves for summary judgment as to these claims. *See* Mot. for Summ. J., ECF No. 49; Mem. in Supp. of Summ. J., ECF No. 50.

## **Legal Standard**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2013).

---

[2] As the parties acknowledge, claims brought pursuant to the Rehabilitation Act, as well as claims of disability discrimination under the Illinois Human Rights Act, are analyzed under the same framework used for ADA claims. *See Jackson v. City of Chicago*, 414 F.3d 806, 810–11 (7th Cir. 2005); *Keen v. Teva Sales & Mktg., Inc.*, 303 F. Supp. 3d 690, 715 (N.D. Ill. 2018). The Court will thus rely on ADA doctrine in assessing Christensen's disparate-treatment and failure-to-accommodate claims.

5

## Analysis

### I. Christensen's Disparate-Treatment Claim

"A claim for disparate treatment based on disability under the ADA . . . requires proof ([A]) plaintiff was disabled; ([B]) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and ([C]) disability was the 'but for' cause of adverse employment action." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (citing *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 503–04 (7th Cir. 2017)). Christensen's disparate-treatment claim fails because she cannot show that she was qualified for her position.

#### A. Christensen was not a "qualified individual."

"The Seventh Circuit has repeatedly held that an employee who does not come to work cannot perform the essential functions of [her] job [and is thus not a 'qualified individual' under the ADA]." *Moore-Fotso v. Bd. of Educ. of the City of Chicago*, 211 F. Supp. 3d 1012, 1025 (N.D. Ill. 2016); *accord, e.g.*, *Basden v. Prof. Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance."); *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927–28 (7th Cir. 2001).

"This regular attendance requirement applies . . . to teachers." *Moore-Fotso*, 211 F. Supp. 3d at 1025; *see Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998) ("[A teacher] who does not come to work cannot perform the essential

functions of [her] job."); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015); *Tyndall v. Nat'l Educ. Ctrs., Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994).

In the Fall 2013 academic term alone, Christensen missed twenty-three classes due to various physical and mental ailments.[3] DSOF ¶ 12; *see, e.g.*, *Preddie*, 799 F.3d at 814 (plaintiff's "twenty-three absences [during a single school year] prevented him from performing the essential functions of his teaching position," and as a result, "he [was] not a qualified individual"); *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899–900 (7th Cir. 2000) (plaintiff's twenty-four absences over a twelve-month period disqualified him as a "qualified individual" under the ADA).

Moreover, the record indicates that Christensen's attendance issues were longstanding. *See Moore-Fotso*, 211 F. Supp. 3d at 1026 ("Given Plaintiff's longstanding history of absences . . . there was literally nothing in the record to suggest that the future would look different from the past and Plaintiff would reliably attend work in the future." (citation omitted)). For instance, when asked about accommodations she requested from Rock Valley, Christensen testified that

---

[3] While Christensen states that Sager, in his deposition, "acknowledged that whatever sick time (e.g.[,] absences) [Christensen] took during the disputed periods were within the parameters of [Rock Valley's] sick leave policy," PSOAF ¶ 42, Sager testified that Christensen did not always claim sick days when she missed class, and that she sometimes failed to call in and ask for a substitute when she was ill, Defs.' Ex. C, Sager Dep. at 31:5–8, 33:10–14, ECF No. 51-1. Moreover, while Christensen contends that "Geary stated that [Christensen's] absences and tardiness were primarily due to physical symptoms she suffered as a result of work related injuries," PSOAF ¶ 45, the record materials she cites do not support this assertion, *see* Resp. to PSOAF ¶ 45, ECF No. 66.

7

during a semester "three to five years" before she was terminated—and every semester thereafter, until her termination—she requested an improved system for notifying her students when she would cancel class. *See* Defs.' Ex. A, Christensen Dep. at 69:10–71:16, ECF No. 51-1. And her memorandum in opposition to summary judgment similarly suggests that her attendance problems went as far back as when she started at Rock Valley in 1998. *See* Mem. in Opp. to Summ. J. at 9, ECF No 58.

While Christensen argues that Rock Valley has failed to establish that she "could not be on time or have less absences if [Rock Valley] provided her with her requested accommodations," Mem. in Opp. to Summ. J. at 5, the ADA does not protect individuals who have unreliable attendance, "even when those absences are a result of a disability," *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). "This rule applies even where an employee asserts that her employer's failure to accommodate led to her attendance issues," *Moore-Fotso*, 211 F. Supp. 3d at 1027; *Key v. U.S. Steel Corp.*, No. 2:11-CV-362-TLS, 2014 WL 772607, at *7 (N.D. Ind. Feb 25, 2014).

Furthermore, "[w]hen an employee is unable to perform the essential functions of attending [her] employment, few, if any, reasonable accommodations exist," *Amadio*, 238 F.3d at 928. "In fact, if an employee cannot regularly attend work, the only imaginable accommodation is an open-ended schedule that allows the employee to come and go as [she] pleases," *id.*, and the Court is not persuaded that such an arrangement would be reasonable for a college instructor. *See Tyndall*,

8

31 F.3d at 213 ("[Plaintiff] held a job that could not be performed away from . . . campus; her position required that she teach the assigned courses during the scheduled class times and spend time with her students.").

Additionally, while Christensen mentions in passing that perhaps "late start; revised schedule; [and] [light] dimmers" may have helped with her attendance problems, Mem. in Opp. to Summ. J. at 5, she offers no explanation as to how these accommodations would have allowed her to more reliably attend her classes. Her Local Rule 56.1 statement of additional facts is no more illuminating. *See Basden*, 714 F.3d at 1038 (concluding that plaintiff, in response to employer's summary-judgment motion, had not pointed to sufficient evidence supporting that her "regular attendance could have expected . . . with any . . . accommodation.").

Christensen thus cannot meet her burden of establishing that she is a "qualified individual."[4] *See E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 950 (7th Cir. 2001) ("After reviewing the record and considering [the employee's] poor attendance record, we are convinced that [the employee] was unable to, and failed to, satisfy his burden of establishing that he is a 'qualified individual' under the ADA."); *Preddie*, 700 F.3d at 814; *Jovanovic*, 201 F.3d at 899–900.

---

[4] Christensen notes that Sager testified that she was fired because she was not fit for duty, and relatedly testified that this was not "a *disciplinary* termination because [Christensen] was repeatedly absent or not in class on time." Sager Dep. at 111:11–16, 27:5–12 (emphasis added); *see* PSOAF ¶ 41, 47. But in elaborating on why the college believed Christensen was not fit, Sager stated that "there is an expectation that faculty are hired to teach, to be in the classroom, to participate with students, and that was not the case." Sager Dep. at 28:8–11.

9

### B. Rock Valley was entitled to rely on Dr. Giakas

Even setting aside that Christensen's unreliable attendance rendered her unqualified for her position, Rock Valley was entitled to rely on Dr. Giakas's opinion that Christensen could not perform her essential job functions. "[G]enerally, an employer is entitled to rely on a medical opinion about whether an applicant can perform the essential functions of a job," so long as "the reliance on the medical opinion . . . [is] reasonable." *EEOC v. Amsted Rail Co., Inc.*, 280 F. Supp. 3d 1141, 1156 (S.D. Ill. 2017) (citing *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 294 (7th Cir. 2015) and *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 975 (7th Cir. 2000)). However, an employer cannot rely on "unsubstantiated and cursory" medical opinions to make employment decisions. *Id.*

Here, Dr. Giakas's forensic psychiatric evaluation—the result of spending 8.5 hours with Christensen and reviewing her past medical history, performance evaluations, and job responsibilities—was presented in a detailed, ten-page report. DSOF ¶ 23. By contrast, it is undisputed that the medical reports Christensen submitted to rebut the findings in Dr. Giakas's report either failed to address the concerns identified by Dr. Giakas, lacked any explanation to support the conclusory conclusion that Christensen's "cognition is intact," or merely addressed whether Christensen's symptoms are related to ADHD. *Id.* ¶ 28.

Because Dr. Giakas's report was detailed and thorough, whereas the reports Christensen submitted were unresponsive, "unsubstantiated[,] and cursory," *Amsted Rail Co.*, 280 F. Supp. 3d at 1156, Rock Valley was entitled to rely on Dr.

Giakas's report to conclude that Christensen was not qualified to perform the essential functions of her job.[5]

For these reasons, the Court grants summary judgment in favor of Rock Valley as to Christensen's disparate-treatment claim.

## II. Christensen's Failure-to-Accommodate Claim

Because Christensen fails to establish that she is a qualified individual within the meaning of the ADA, the Court need not address the merits of her failure-to-accommodate claim. *See Moore-Fotso*, 211 F. Supp. 3d at 1028; *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015) ("To establish failure to accommodate, [plaintiff] ha[s] to present evidence that . . . [she] is a qualified individual with a disability.").

Relatedly, even assuming that Rock Valley failed to engage in the interactive process required by the ADA, *see* Mem. in Opp. to Summ. J. at 4, "that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Basden*, 714 F.3d at 1039. As noted above, Christensen's memorandum in opposition to summary judgment, as well as her Local Rule 56.1 statement of additional facts, lack any meaningful description of

---

[5] Christensen raises questions about why Dr. Giakas's report was much more detailed than Dr. Vermuri's initial report and seems to suggest that Rock Valley had colluded with Dr. Giakas to create a report that would justify terminating her. *See, e.g.*, Mem. in Opp. to Summ. J. at 7. But it is undisputed that the college allowed Christensen to present supplemental reports and information to rebut Dr. Giakas's report, and it is further undisputed that the supplemental materials she eventually submitted, as noted above, were lacking. DSOF ¶¶ 24, 27–28.

11

the accommodations she requested or how they would have enabled her to attend her classes more regularly. *See Stern*, 788 F.3d at 289 (describing plaintiff's burden of "showing that a reasonable accommodation could be made that would enable her to carry out the essential functions of her job." (citation omitted)).

Summary judgment is therefore also granted in favor of Rock Valley as to Christensen's failure-to-accommodate claim.

## **Conclusion**

For the foregoing reasons, Rock Valley's motion for summary judgment is granted. Civil case terminated.

ENTERED: 3/17/20

_____

John Z. Lee

United States District Court Judge